Andrew Erickson
LANDYE BENNETT BLUMSTEIN LLP
701 West Eighth Avenue, Suite 1100
Anchorage, AK 99501
(907) 276-5152
andye@lbblawyers.com

*Attorneys for Defendant Laura McIndoe*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | |
| LAURA MCINDOE, | |
| Defendant. | Case No. 3:26-po-00002-MMS |

# DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................... iii

INTRODUCTION.............................................................................................. 1

FACTS............................................................................................................ 3

ARGUMENT.................................................................................................... 4

    I.      There is no probable cause to believe Ms. McIndoe
           committed a criminal offense............................................................ 4

    II.     The trapper was not authorized to set traps on
           Wood Cutting Road where Ms. McIndoe's dog was caught............ 8

CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Elonis v. United States,*
 575 U.S. 723 (2015)........................................................................7

*Gasho v. United States,*
 39 F.3d 1420 (9th Cir. 1994)......................................................5, 6

*Morissette v. United States,*
 342 U.S. 246 (1952)........................................................................7

*Rehaif v. United States,*
 588 U.S. 225 (2019)........................................................................6

*United States v. Davis,*
 588 U.S. 445 (2019)......................................................................15

*United States v. Metcalf,*
 156 F.4th 871 (9th Cir. 2025)..................................................7, 15

*United States v. Moore,*
 483 F.2d 1361 (9th Cir. 1973)......................................................6

*United States v. Smith,*
 790 F.2d 789 (9th Cir. 1986).......................................................5

**Statutes**

16 U.S.C. § 668dd......................................................................2, 8

**Federal Regulations**

50 C.F.R. § 27.84........................................................................2, 8

50 C.F.R. § 36.32.............................................................................9

**Other Sources**

Department of Justice Manual...........................................................................4

Victoria Peterson, Wildlife refuge woodcutting permits available,
    Peninsula Clarion (Oct. 13, 2019),
    https://www.peninsulaclarion.com/2019/10/13/wildlife-refuge-
    woodcutting-permits-available/..............................................................13

Defendant Laura McIndoe, through undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 12(b), respectfully moves this Court to dismiss the Notice of Violation.

## INTRODUCTION

There are few things more traumatic than seeing a family pet in pain. When Ms. McIndoe's dog, Arrow, suddenly got caught in a trap, she was understandably filled with terror and panic. She tried desperately to free her dog, but it was also frantic and bit her hand. Although she had devoted her career to educating middle school students on how to act civilly, she was beside herself with fear and overwhelmed. Her own blood dripped down her fingers as her dog writhed in pain. She cursed at the trapper.

After Arrow was freed, Ms. McIndoe immediately reported what had happened to law enforcement. As a long-time Alaska resident and a former trapper on the Yukon River, she's not against trapping. However, she also knew that she was allowed to have her dog off leash and under voice control where she was walking, and through no fault of her own, she and her dog were both injured.

But now, to add insult to those physical and emotional injuries, the Government has charged Ms. McIndoe with a federal crime. According to the Notice, Ms. McIndoe is accused of violating a federal regulation prohibiting

interference with a "private person engaged in the pursuit of an authorized activity on any national wildlife refuge."[1]

This Court should dismiss the charge for at least two reasons. *First*, the facts of this case do not support a reasonable belief that Ms. McIndoe committed any offense. Ms. McIndoe's "dog was accidentally caught in a trap and she freed it;"[2] the circumstances do not demonstrate that she intended to or did interfere with the trapper. Thus, there was never probable cause to issue her a citation.

*Second*, as a matter of law, McIndoe could not have unlawfully interfered with the trapper because the trapper was not authorized to set traps on the public road where Ms. McIndoe and her dog were walking. The Government concedes that Ms. McIndoe was walking her dog on a public road within the Kenai National Wildlife Refuge (KNWR).[3] Under regulations adopted by the KNWR, "trapping is prohibited within one mile of public roads."[4] Thus, the

---

[1] Docket No. 1 at 2 (citing 16 U.S.C. § 668dd; 50 C.F.R. § 27.84).

[2] Docket No. 11 at 9; *see* Docket No. 13 at 3 (arguing that the Notice "is specific to discuss the trapper, his authorization and his permit as well as the alleged conduct of the defendant").

[3] Docket No. 1 at 2; *see* Docket No. 13.

[4] *See infra* note 32 and accompanying text.

*United States v. McIndoe*
Defendant's Motion to Dismiss

Case No. 3:26-po-00002-MMS
Page 2 of 16

trapper was not engaged in an "authorized activity" because he was not allowed to set traps on that road.

## FACTS

According to the Notice, on February 5, 2025, Ms. McIndoe was walking her dog on "an old and overgrown road to an oil and gas exploration pad" when her "dog got caught" in a leghold trap.[5] Ms. McIndoe was understandably "very upset" and told the trapper who had been lingering nearby with a rifle, to "stay away" while she attempted to free her dog.[6] Ms. McIndoe also called her sons, who arrived to help.[7] By the time State and federal law enforcement officers encountered Ms. McIndoe on the road, she had already freed her badly injured dog and was "in a hurry to get the dog to a veterinarian for care."[8]

The Notice alleges that the "trapper said two of his traps sites besides the one the dog had got caught in were destroyed" and that he was unable to locate the trap that had caught Ms. McIndoe's dog.[9] According to the Notice, in an interview that was conducted weeks later, Ms. McIndoe "said she didn't know what happened to the trap [that] was caught on the dog's leg," but that

---

[5]     Docket No. 1 at 2.

[6]     *Id.*

[7]     *Id.*

[8]     *Id.*

[9]     *Id.*

*United States v. McIndoe*                                  Case No. 3:26-po-00002-MMS
Defendant's Motion to Dismiss                              Page 3 of 16

"the dog was doing better after a large vet bill."[10] Over nine months later, Federal Wildlife Officer Shay Hurd "issued a violation notice" to Ms. McIndoe for "interfering with persons engaged in authorized activities."[11]

ARGUMENT

### I. There is no probable cause to believe Ms. McIndoe committed a criminal offense.

The Notice does not identify specifically what Ms. McIndoe is alleged to have done wrong. Given the opportunity to clarify its position in this case, the Government did not dispute that Ms. McIndoe was charged simply because her "dog was accidentally caught in a trap and she freed it."[12] However, that unfortunate accident cannot be the basis for concluding that Ms. McIndoe violated any law. Because the Notice lacks probable cause to establish that Ms. McIndoe committed any violation, this case should be dismissed.

Probable cause is a requirement for the initiation and prosecution of any federal criminal charge.[13] "Probable cause is more than mere suspicion.

---

[10]  *Id.*

[11]  Docket No. 1 at 2.

[12]  Docket No. 11 at 9; *see* Docket No. 13 at 3 (arguing that the Notice "is specific to discuss the trapper, his authorization and his permit as well as the alleged conduct of the defendant").

[13]  *See* Department of Justice Manual Cmt. 9.27.200 ("[F]ailure to meet the minimal requirement of probable cause is an absolute bar to initiating a federal prosecution.").

*United States v. McIndoe*  Case No. 3:26-po-00002-MMS
Defendant's Motion to Dismiss  Page 4 of 16

Probable cause exists when, 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability' that a crime was committed."[14]

Here, the Government does not allege any set of facts that could lead a reasonably prudent person to conclude that Ms. McIndoe committed a crime. There is no allegation that Ms. McIndoe stole or destroyed any traps, and no evidence to believe that she did either of those things. When law enforcement officers encountered Ms. McIndoe on the road headed back to her car, she wasn't carrying anything, let alone a concealed trap set. Although she was in a hurry to get her dog medical treatment, she stopped and had a polite conversation with the law enforcement officers, who allowed to her proceed back to her car to take her limping dog to a veterinarian.[15] Ms. McIndoe explained that she "didn't know what happened to the trap," which was likely left in the snow on the road where her dog had been caught and then freed.

The Government also does not allege that the trapper felt threatened by Ms. McIndoe. The trapper had a rifle, and he never left the area, even after witnessing Ms. McIndoe's dog caught in a trap. Ms. McIndoe may have alerted

---

[14] *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)).

[15] Docket No. 1 at 2.

the trapper that her sons were on the way to help her and that they'd be angry, but there is no allegation that the trapper felt threatened in any way.

Instead, the Government's theory in this case, as explained in Officer Hurd's November 25, 2025 letter to Ms. McIndoe, is that she is culpable simply because her dog was accidentally caught in a trap.[16] As Officer Hurd wrote, "[n]o one wants to see a dog caught in a trap, but it occasionally happens" and "pets sometimes wind up in traps."[17] The Government apparently believes that anytime a pet accidentally gets caught in a trap—or even when a hiker or skier accidentally stumbles into a trap—there has been an unlawful interference with the trapper. But that is not the law.[18]

The Supreme Court of the United States has explained that when a criminal law is silent on a state-of-mind component of an offense, courts "must start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state."[19] That requirement "reflects the basic principle that 'wrongdoing must be conscious to

---

[16]     Exhibit 1 at 1.

[17]     Exhibit 1 at 1.

[18]     *See Gasho v. United States*, 39 F.3d 1420, 1343 (9th Cir. 1994) ("Probable cause is lacking if the circumstances relied on are 'susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities." (quoting *United States v. Moore*, 483 F.2d 1361, 1363 (9th Cir. 1973))).

[19]     *Rehaif v. United States*, 588 U.S. 225, 228-29 (2019).

be criminal.' "[20] Unforeseeable accidents are not crimes. "The rule is 'as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.' "[21]

Here, Ms. McIndoe was authorized to be walking on the road—just as she has done countless times in the last 20 years—and she was authorized to have her well-behaved dog off leash and under voice control. It defies common sense to believe that Ms. McIndoe consciously brought her off-leash dog into an area that she knew had traps intending that her dog would get caught or otherwise disturb the traps. When her dog was unexpectedly caught, the only reasonable thing for her to do was free it—even if that meant damaging the trap. She left the traps behind and immediately headed to the veterinarian. Put simply, Ms. McIndoe did nothing wrong and a reasonable person could not have concluded that she committed a crime.

Thus, this Court should conclude that the was no probable cause to charge Ms. McIndoe with a federal crime. The Notice should be dismissed with prejudice.

---

[20] *Elonis v. United States*, 575 U.S. 723, 734 (2015) (quoting *Morisette v. United States*, 342 U.S. 246, 252 (1952)).

[21] *United States v. Metcalf*, 156 F.4th 871, 884 (9th Cir. 2025) (quoting *Morisette*, 342 U.S. at 250).

## II. The trapper was not authorized to set traps on Wood Cutting Road where Ms. McIndoe's dog was caught.

Ms. McIndoe is charged with violating 50 C.F.R. § 27.84, which provides:

> *Interference with persons engaged in authorized activities.* Disturbing, molesting, or interfering with any employee of the United States or of any local or State government engaged in official business, or with any private person engaged in the pursuit of an authorized activity on any national wildlife refuge is prohibited.[22]

However, as a matter of law, the Government cannot prove the elements of that charge because the trapper was not "authorized" to set traps "within one mile of public roads," which is where Ms. McIndoe was walking when her dog was caught in a trap.

Under the National Wildlife Refuge System Administration Act of 1966, the Secretary of the Interior is authorized to permit the use of the KNWR "for any purpose, including but not limited to hunting, fishing, public recreation and accommodations."[23] Prior to authorizing any of those uses, the Secretary must determine that the proposed use is compatible with the refuge's purpose and "is not inconsistent with public safety."[24]

---

[22]   Docket No. 1 at 2.

[23]   16 U.S.C. § 668dd(d)(1).

[24]   *Id.* at § 668dd(d)(3)(A)(i).

Pursuant to the Administration Act, the Secretary adopted regulations authorizing trapping within the parts of the KNWR.[25] In a 2007 Compatibility Determination, the KNWR determined that "[t]rapping is a historical activity on the [KNWR], and throughout Alaska, that has attributes that include recreation, commercial, and subsistence elements."[26] However, the trapping Compatibility Determination relied on the fact that the KNWR trapping regulations included specific provisions to protect public safety.[27] Under 50 C.F.R. § 36.32(c)(1)(iii), all trappers on the KNWR must have a trapping permit[28] and attend a mandatory training class, which addresses "public concerns over ethics, safety, and animal suffering."[29]

Importantly, the Compatibility Determination concluded that specific trapping permit requirements, "including a closed area buffering trail-heads, facilities, and roads" from trapping, had reduced "the non-target catch of dogs,"

---

[25]    *See* 50 C.F.R. § 36.32.

[26]    U.S. Fish & Wildlife Service, Kenai National Wildlife Refuge, Trapping Compatibility Determination at 2 (2007) (attached as **Exhibit 2**).

[27]    Exhibit 2 at 4.

[28]    "[E]ach person shall continue to secure a trapping permit from the appropriate Refuge Manager prior to trapping on the Kenai, Izembek and Kodiak Refuges and the Aleutian Islands Unit of the Alaska Maritime Refuge." 50 C.F.R. § 36.32(c)(1)(iii).

[29]    Exhibit 2 at 4-5.

*United States v. McIndoe*                         Case No. 3:26-po-00002-MMS
Defendant's Motion to Dismiss                      Page 9 of 16

which "was a concern prior to the late 1980s."[30] "After this, the incidental catch of pets has not been an issue."[31] Thus, consistent with that Compatibility Determination, each KNWR trapping permit clearly states that, "[t]rapping is prohibited within one mile of public roads, campgrounds, and road accessible trailheads."[32] The intent of that permit condition was to prevent dogs from getting caught in traps in areas where people frequently recreate.

Here, the public road described in the Notice that Ms. McIndoe and her dog were walking on is called "Wood Cutting Road," or "Wood Cut Road."[33] It begins at approximately mile 6.5 of Funny River Road, where there is a parking area with a large metal vehicle gate.

Wood Cutting Road is owned by the United States and managed by the U.S. Fish and Wildlife Service on the KNWR. Although it was originally

---

[30] Exhibit 2 at 8.

[31] *Id.*

[32] Kenai National Wildlife Refuge, Trapping Permit, Addendum T – Trapping/Snaring Special Conditions (attached as **Exhibit 3**). The permit conditions note that "[t]rapping for mink and muskrat using leg hold traps 1 ½ or smaller and 110 or 120 conibears will be allowed in these closed areas." Exhibit 3 at 2. However, that exception does not apply here because those were not the kind of traps used by the trapper or the targeted species, which was lynx. *See* Exhibit 4 at 2.

[33] *See* U.S. Fish & Wildlife Service, Draft Environmental Assessment for Amendment of Public Use Regulations at Kenai National Wildlife Refuge at 38 (June 11, 2020) (excerpts attached as **Exhibit 5**).

constructed as a "road to an oil and gas exploration pad,"[34] it has since been closed to general vehicle traffic, except emergency vehicles, which sometimes drive on the road.

Wood Cutting Road is a popular recreation area in the KNWR for hikers, snowshoers, and cross-country skiers. In the winter, human travel over the snow-covered road results in a single file, packed trail down the middle of the road. The image, below, captured from body-worn camera video on February 5, 2025, depicts the metal gate at the beginning of Wood Cutting Road, with a "No Parking Any Time" sign, indicating that the area must be kept clear of parked cars to allow emergency vehicles to enter the road.



---

[34]     Docket No. 1 at 2.

Public recreation maps, including maps published by the KNWR depict "Wood Cutting Road," jutting off from Funny River Road. Both of the maps below were created or published by the KNWR; "Wood Cutting Road" is clearly labeled as a "Road."



KNWR Map 1: Depicting "Wood Cutting Road," where bicycles and game carts may be used. Source: Exhibit 5 at 4.



KNWR Map 2: Depicting Wood Cutting Road as a solid black line (a "Road") jutting south from Funny River Road (in orange). Source: Victoria Peterson, Wildlife refuge woodcutting permits available, Peninsula Clarion (Oct. 13, 2019), available at https://www.peninsu-laclarion.com/2019/10/13/wildlife-refuge-woodcutting-permits-available/ (noting "Image courtesy of Kenai National Wildlife Refuge").

When interviewed by law enforcement, the trapper, who is described in the Notice, plotted the locations of his traps exactly along Wood Cutting Road, as depicted in the GIS map below that was produced by the Government in this case. Thus, there is no question that the traps were set unlawfully within one mile from a public road.



ttps://webmap.onxmaps.com/hunt/map#12.47/60.44393/-150.91255                    1/2

McIndoe_etal_00000527

Ms. McIndoe stated that she did not think trapping was allowed in that area—with good reason.[35] A person who was familiar with the KNWR trapping

---

[35]     Docket No. 1 at 2.

permit requirements and the public recreation maps of the area would reasonably conclude that trapping is not allowed on the road and so it would be safe to walk a dog there.

In sum, Wood Cutting Road is a public road within the KNWR, and KNWR trapping permits prohibit trapping within one mile of any public road. The trapper may have believed that he was allowed to trap there, but under the plain language of his permit,[36] trapping was not authorized on Wood Cutting Road where Ms. McIndoe and her dog were walking.[37]

Thus, this Court should conclude as a matter of law that Ms. McIndoe could not have unlawfully interfered with the trapper because the trapper was not engaged in an "authorized activity." Trapping was not "authorized" on Wood Cutting Road.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Notice of Violation. There was no probable cause to believe that Ms. McIndoe committed any offense simply because her dog was accidentally caught in a trap and she freed

---

[36] Exhibit 3 at 2.

[37] *See United States v. Metcalf*, 156 F.4th 871, 882 (9th Cir. 2025) (applying the rule of lenity, which provides that "ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor") (quoting *United States v. Davis,* 588 U.S. 445, 447 (2019)).

it. Additionally, trapping was not an "authorized activity" on Wood Cutting Road because the KNWR trapping permit conditions specify that trapping is prohibited within one mile of public roads.

DATED: June 15, 2026       LANDYE BENNETT BLUMSTEIN LLP

*/s/ Andrew Erickson*

_____

Andrew Erickson, Alaska Bar No. 1605049

*Attorneys for Defendant Laura McIndoe*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2026, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Andrew Erickson*

_____

Andrew Erickson

Case 3:26-po-00002-MMS    Document 17    Filed 06/15/26    Page 20 of 20